The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Oyez! Oyez! Oyez! All persons having any manner or form of business before the Honorable of the United States Court of Appeals for the Fourth Circuit are admonished to draw an eye and give their attention where the Court is now sitting. God save the United States and this Honorable Court. Good morning. Please be seated. We're happy to hear argument in our first case, No. 12-43-46, United States v. Davis. Thank you, Judge Motz, and may it please the Court. It is undisputed that Mr. Davis' 2005 guilty plea produced a single, indivisible sentence under North Carolina state law. That single sentence cannot be counted under the career offender guidelines for two reasons. First, the plain text doesn't authorize such double counting. And second, double counting would violate the fundamental principle of deference to prior state court resolutions. Well, it can only be counted once. Correct. It can only be counted once. I mean, that's your position. Yes. If we look first at the guidelines text, the government's argument hinges entirely on the fact of an intervening arrest, which is relevant only under Section 4A 1.2, subsection A2. But that provision, by its very terms, applies only, quote, if a defendant has multiple prior sentences. That condition isn't satisfied in this case because Mr. Davis received only a single sentence under North Carolina law. North Carolina law is a little bit unusual in this respect. The default rule in most states and in the federal system is that each conviction carries a separate sentence. But that's not the case in North Carolina. The state has a special statutory mechanism that permits a sentencing judge, in appropriate cases, to join multiple convictions together and impose a single sentence. That's exactly what happened here. And under the plain text of the guidelines, that sentence is counted only once. If we look at Section 4B 1.2, that section says that a conviction counts as a career offender predicate only if it carries a sentence that receives criminal history points under Section 4A 1.1. Here, there is only one sentence under state law, so there can be only one career offender predicate. Do you know of any other states that have statutes like North Carolina? I don't. In this respect. I don't, Your Honor. Have you made any search? I did not look at all 50 states. I did look at all of the states in this circuit and found that none of them have an analogous provision. And in reading case law from across the country, I have not seen any references to states that have a similar mechanism. Besides lacking support in the text of the guidelines, the government's position violates a default principle that federal sentencing courts defer to what actually happened in state court rather than looking to what could happen. We see this principle applied by the Supreme Court in cases like Taylor and Shepard, and we see it applied by this court's in-bank decision in Simmons a couple of years ago. And I think that there is language from the Simmons decision that is particularly applicable in this case. And there, Judge Motz, you wrote, well-established federalism principles do not permit a federal court to reject North Carolina's judgment as to the seriousness of a North Carolina offense prosecuted in North Carolina court and adjudicated by a North Carolina judge, merely because the federal court might expect a more serious punishment. That's exactly what the government is seeking to achieve here. It's clear that the state prosecutor could have insisted on a more onerous resolution that would have carried multiple separate sentences under state law for each of the separate convictions, and that doing so would have rendered Mr. Davis a career offender under the guidelines. Is there any indication that the sentence that he received, the sentence, only got one sentence, was higher than the sentence would have been if it was only for one conviction? No. The way the consolidated scheme works in North Carolina is that the sentence he received is based on the most serious of the offenses. So when multiple offenses are consolidated together, the state statute directs that the court must include a sentence that is based on the most serious of the offenses that comprise that consolidated judgment. And I assume you would acknowledge that if these crimes had not been combined for sentence, we would have two predicates for federal sentencing purposes. That's correct. Mr. Davis was initially charged in state court under separate charging instruments, had those proceeded separately and yielded separate sentences on separate occasions, that he would have qualified as a career offender. What sense is there in making a new rule, a different rule? The sense is that it follows the text of the guidelines as they're written. The commission in putting together its rules for calculating criminal history and calculating when career offender status applied, it considered different options. And if you look at the background note in section 4A1.1, the commission acknowledged there that state practices in charging offenses and in sentencing vary from jurisdiction to jurisdiction, so that any measure it could have picked for criminal history would be potentially imperfect in any particular case. And so it chose to rely on the sentence imposed rather than looking, for example, what Congress did in the Armed Career Criminal Act, is to look at whether the offenses were committed on separate and distinct occasions. The commission could have considered such an inquiry and didn't. It instead relied on the sentence imposed. And so that is what we apply the guidelines, how we apply the guidelines. So you rely on the plain language. I think I understand that, but I'm asking if you can come up with any possible rationale to treat the two sentences that were combined here into one sentence different than what would have been more typical for two crimes completed a year apart, receiving two sentences in separate time periods. Sure. So there are two things I would say to that. The first is that one policy purpose it achieves is simply to accord deference to the state's judgment as to how serious this series of offenses was. The state had the option to pursue multiple concurrent sentences or multiple consecutive sentences. But in its discretion, the state prosecutor and the state judge agreed that the appropriate sentencing outcome here was to treat this as a, to impose a single sentence. The second thing I would say to that is that if we think, and the government in its brief argues, that applying the guidelines by their plain text might create some type of sentencing disparity in this case. If that's true, the solution isn't to twist up the plain words of the guidelines. It's to apply the mechanism that the guidelines put in place for this very purpose. And that is to seek, for the government to seek a departure under Section 4A1.3 based on an argument that the guidelines, as written, do not adequately take into account Mr. Davis' criminal history. So that, to the extent there's a question about whether the plain meaning of the guidelines doesn't do justice to Mr. Davis' history, that is the appropriate way to proceed. So would that option still be available? Yes. I wonder why you were given the reconnaissance information to never say. Well, I just read the guidelines, like I said, as they're written. And that option would be there should they choose to pursue it. Of course, the district judge has a great deal of discretion there in determining whether to apply a departure and how large of a departure he would apply. And I was going to ask you something similar, which is, isn't this essentially a red herring? Because at the end of the day, a judge could treat someone, even if this were, in fact, ultimately decided to be a situation in which he didn't qualify as a career offender, he could be treated as a de facto career offender under the guidelines. He could. In theory, the government could certainly seek to impose an upward departure that would go that high. But, again, nonetheless, Mr. Davis would still be entitled to a procedurally reasonable sentence. And that begins with a proper calculation of the guidelines range according to their plain text. And then should the government seek to get that departure, it could make its arguments in favor of it. I would point out to the court that there is a tremendous gap in this case between the properly calculated guidelines range and the career offender range. It's a gap that spans between nine and 13 years. So if the judge decides on remand to consider an upward departure, he may well depart only upwards two years, only four, only six, or he may decide to go all the way to the career offender range. How do you reconcile your position with this court's decision in Huggins? Well, Huggins simply didn't address the panel there didn't address the question presented here because the defendant didn't raise it. The defendant relied there solely on the old related cases rules, which were revised out of the guidelines, and it didn't raise the textual argument based on the language for A1.1 and for B1.2. And so since that argument wasn't raised and wasn't addressed by the court, it simply doesn't control here. Finally, to the extent the court believes that there is some degree of ambiguity in how the guidelines are written, I would remind the court that it should apply the rule of plenity here in favor of the criminal defendant. Well, if you look at the Huggins record, you see that he received two separate sentences. Right, and the court mentions that in the opinion. It describes him as having received two separate sentences. I admit I don't think the decision in Huggins is clear on this point. Again, that's because the defendant didn't raise this textual argument, so it wouldn't be. But the textual argument wouldn't win for him. That's a good reason not to raise it. Finally, in sum, I would say that because the government has not and cannot identify anything within the plain text of the guidelines that would permit a single sentence to be counted twice, the court should order a resenting in this case. If there are no further questions, I would reserve the remainder of my time. Thanks very much. Thank you. Ms. Ray? May it please the court, Amy Ray for the United States. Your Honors, this court held in 1999 in Huggins squarely in a case that involved exactly this situation. The defendant had two prior convictions under North Carolina state law that were consolidated for sentencing, and this court held that those two offenses were to be counted separately and that the defendant should, in fact, be sentenced as a career offender. Well, help me with this, Ms. Ray, because I thought that it was pretty clear from the joint appendix that Huggins received two separate sentences. Well, I understood, Judge Motz. Now, I did not see the joint appendix in Huggins. I don't have access to his pre-sentence report. What I saw was that he had, I read the briefs, and he had two prior convictions under North Carolina state law that were consolidated for sentencing. So I assumed that one sentence was imposed. If I'm wrong on that, then fine. Let me just say this. It's been applied since 1999 for 14 years in a case, in several cases, involving prior North Carolina sentences. Melvin is one of those where we know for sure because Melvin argued that he had received only one sentence. And the court in the Melvin decision, which I cite in my brief, acknowledges that he had received only, that defendant received only one sentence. And the court applied Huggins to hold that he had two prior convictions for purposes of career. These are unpublished opinions. The Melvin was, Your Honor. But it applied Huggins. And I, like I said, I don't have access to the pre-sentence report in Huggins. I have a JA reference. I don't know whether it's free. From the briefs, I sort of, the North Carolina procedure, let me just be clear, this happens all the time. It is not something that is simply, there's no judgment that's made. It is an administrative process that the court simply consolidates for sentencing purposes. One sentence is imposed. That happens routinely. It is not a case where what happens routinely is there are multiple convictions that are being sentenced and multiple sentences are imposed. It's the inverse. I understand. North Carolina has interesting little differences. Yes, it's not the first time we've addressed, yes. But it doesn't even seem to me that this needs to be a big problem for you. Right. Because if we should vacate and remand, the government can make the argument that you should get an upper departure here, right? Well, we can make that argument, Judge Martin. But I want to be clear. I think that if this court goes the other way, this court reverses Huggins. Right. But you wouldn't feel that way if you had seen the brief. I mean, you know, you do it on the basis of what you've seen. Well, that's okay. Sure. And you also rely on the unpublished opinions. I understand that. Yes. And 14 years of jurisprudence. But not 14 years of published opinions. No. Fair enough. Absolutely fair enough. And if, in fact, this defendant in Huggins received two separate sentences, fine. I'm not sure, even then, that it makes a difference. I mean, I know it doesn't make a difference for purposes of our argument. In terms of relying on Huggins only, yes. But let me say the plain language of the guidelines. The plain language of the guidelines. We start with 4B1.1. So let's not ignore 4B1.1, which talks about two prior convictions. And it defines a conviction as an offense that's punishable by more than one year in prison. Then it refers us to 4A1.2. Yes. But why does it refer us to 4A1.2? Because the question is, are those two offenses related sufficiently to be called separate or combined? And the measure is, were they part of the same course of conduct, or were they separated by an intervening arrest? And in every other circuit that has looked at this question, and admittedly, I haven't found either a jurisdiction in which it is a single one sentence. But the measure, if you look at those cases, Seventh Circuit, Eighth Circuit, every one that I've seen, it talks about, well, was it formally consolidated? And the First Circuit uses interesting language. Was there a judgment made that somehow there was a relationship that warranted a single sentence? Not was it an administrative process that always reacts. See, I think that this argument, good as it is, is in some tension with your first argument, which is this is routine under North Carolina law. Crimes that take place a year apart are routinely put together and consolidated for sentence without separate sentences. Well, then it strikes me that there's not a lot of thought about do these things relate to each other? It's just sort of an administrative cleanup. Right. No, that's true. You can't so much rely on the First Circuit talking about there's been this judgment that they should be consolidated at the sentence time, even though they don't receive the same sentence. Well, with all due respect, I think we can. Because the point behind the First Circuit was it doesn't make sense. The Sentencing Commission wouldn't say these are related unless a district judge made, not a district judge, but a state sentencing judge made the determination that they were. And that doesn't happen in North Carolina. I mean, what happens in North Carolina is they're all combined. That happens. Now, let me just note this, because this is something that occurred to me last night to look up, which is that I ask myself, well, what happens if this is vacated in North Carolina courts, right? I mean, if it's a single sentence and it's vacated, what happens? Does it just go away? What happens to the other convictions? And, in fact, it's remanded, and the sentencing judge gets to look at it, and it's as if concurrent sentences were imposed, because it doesn't just go away. They remand it, and the state judge looks at it and determines what the sentence should be. But routinely, your representation is there are two convictions that are consolidated for one sentence. Right. And one is vacated. One conviction is vacated. One conviction is vacated. They send the case back. Right. They send the case back. Good. That would be extraordinary if they didn't. Well, it would be, but I guess my point is that it is the equivalent of concurrent sentences, because they go back, and they look at it, and they say, okay, this was also for a Class C felony. We're going to impose the same sentence. In other words, if you have two convictions, it's the same. There's a lot of force to what you're saying, Ms. Ray, but almost always when you're before us with these guidelines cases, you're telling us to look at the plain language of the guidelines, no matter how inequitable the result may be. Well, okay, I don't really. You have to stand by the plain language of the guidelines. Well, sure, absolutely. That's what the Supreme Court tells us to do. We always look at the plain language first. I agree, but I don't think two things. I don't think the plain language in this case dictates it, because I think that this Court can look at that plain language and say, what did the Sentencing Commission mean by sentences? What is it referring to? What is 4A? Why did they refer us to 4A1.2? They didn't refer us to 4A1.2 to make two convictions one. They referred us to 4A1.2 so we could see if those convictions were sufficiently related that they would have yielded two criminal history points. And this Court in Huggins and since then has held that if they're consolidated under North Carolina law and even where a single sentence is imposed and that has been argued and rejected, that constitutes two separate convictions as long as there was an intervening arrest. And honestly, even if it's at all ambiguous, it doesn't make sense. It does yield. This is not a discretionary decision, as defendants suggest, that is worthy of deference because there's no indication that any real discretion was applied. In other words, this isn't the same as in Simmons where it was a discretion as to whether to charge as a felony or not as a felony, whether to charge the prosecutorial kinds of discretions. This is, hey, they're all coming up for sentencing for one day, sentence them to the highest, you know, based on the most serious offense level and be done with it. And it would be tremendously unfair, and I think it doesn't make sense for this Court to hold that a defendant in North Carolina who happens to be sentenced on the same day and has two robberies as this person does is not a career offender, two very serious violent robberies. But when you think of what the goals of sentencing are, just to play devil's advocate, let me suggest that if you are going to be saddled as a career offender, the whole point of the sentencing is at least as I would see it, you want to have given someone a chance to be rehabilitated or rehabilitate themselves and learn from the punishment. And so before you sort of label them as a career offender with everything that follows from that, if someone has only served one sentence, that's quite different than saying you committed two offenses and you  Here we have an individual who may have committed more than one robbery, but he only was punished once. And doesn't that make a difference when you analyze whether you should, I mean, is that possibly a rationale for why the guidelines are written the way they are? Judge Hollander, with all due respect, if these were concurrent sentences and yet he only served one time, nobody in this courtroom would suggest that that doesn't qualify as a career offender. I asked you if there was, I think I asked you if there was, maybe I asked your colleague, whether there was any increase in the sentence here. And the answer was no. I'm sorry. There's no increase because two crimes work, were consolidated for a sentence. No, what they, right. Judge Hollander's point stands. No, no. Let me go back and sort of answer that. First of all, North Carolina under North Carolina law, they tag that one sentence to the highest, most serious offense. But I'm saying that under any other state's laws, Virginia, New Jersey, wherever, if they had received concurrent sentences for two prior offenses that were separated by an intervening arrest, they only go to prison one time, but they happen to be serving two concurrent sentences. It is well established that that would trigger a career offender enhancement. So there is no judgment in the guidelines that you have to go to prison, get released, and come back to prison to qualify as a career offender. That is absolutely not true. Now, here's the other issue with respect to the possibility of moving for an upper departure. Also, the defendants can go down, right? This court, this Judge Cogburn imposed a below guidelines sentence by quite a bit. So just because one is tagged as a career offender doesn't mean one is sentenced as a career offender post-Booker. So it's not, this, this is a question of properly calculating the guidelines. And under this court's jurisprudence, Huggins and beyond, this question has considered to have been settled by Huggins, and it has been routinely applied. And, and there is no difference between what happens in North Carolina for purposes of how many times a defendant has to be in prison and what happens in any other state. One term, one time of going to prison can qualify you as a career offender as long as you have two offenses. And in every other state, that's easy enough because they can be concurrent. In North Carolina, there's a, there's a different procedure that allows for the imposition of a single sentence, but it functions as a concurrent sentence because if that sentence is vacated, it goes back. And I would refer your honors, just one case I found was State versus Skipper. This is 715 Southeast 2nd, 271. That's a North Carolina Court of Appeals decision in which the defendant argued that he couldn't receive the same sentence on remand because one conviction had been vacated and the court held no, you can receive the same sentence because just because that conviction that was what you were sentenced on the first time is vacated doesn't mean you can't receive the same sentence on remand. You had an equivalent, the same level felony that you were also sentenced for at the same time. So I understand the defendant's textual argument, but I do think that that takes prior sentences in isolation without, you know, part of the plain language is to consider the context of the whole. And here, the context of the whole also includes 4B1.1, which defines prior convictions as offenses that generate more than one year in prison. And this defendant was convicted of offenses that were not related to each other in any way. And to hold that he is not a career offender when it was simply a matter of the date that he was sentenced on and the idiosyncrasies in some ways of North Carolina law that allows the entry of a single sentence when multiple offenses are sentenced on one day, it just doesn't make sense that he wouldn't be a career offender and somebody else whose sentence happened to be, offenses were sentenced on separate days would be. It's the same situation. There's no policy or discretionary call there that to which this court should defer. And really we feel like Huggins and 14 years of application of Huggins should settle it. Thank you very much. Thank you. Mr. Carpenter, do you have any? I just wanted to clarify a couple of things. I think the court understands the textual argument, but first Ms. Ray suggested that Judge Cochran in this case imposed a downward bearing, downward departure. That's not accurate. The guidelines range was calculated as 262 months to 327 months. That's a joint appendix 48. Judge Cochran imposed a sentence within that range, 276 months, which is a JA 58. There are a couple of aspects of North Carolina law that I think were a little muddled or misrepresented. First, this is not purely an administrative process. If it were an administrative process, a consolidation would always yield a single consolidated judgment. It's actually the common practice in state courts that you will have, for example,  They will potentially be consolidated. Say you have five convictions, which would yield two consolidated judgments in some cases or one consolidated judgment in others. So it's not solely the case that there is always only one consolidated judgment. Who makes that call? That's something that's up to the state prosecutors and state judges. And when you say state court, you mean always North Carolina? Yes, North Carolina State Court. Another aspect is that this isn't purely administrative. It does have important benefits for a defendant, who is a plea negotiation to seek a consolidated judgment, as opposed to multiple concurrent sentences. The two key benefits for a defendant in that circumstance are first by seeking a single consolidated judgment. Defendant will limit their maximum exposure to the maximum permitted under the most serious of the offenses consolidated into that judgment. The second benefit to a defendant is under North Carolina's habitual felon statute. If two offenses are consolidated into a single judgment, that will ensure that the defendant will be treated as receiving only one offense under North Carolina's habitual felon statute. If the offenses proceed separately and result in separate convictions, even if they're run concurrently, there are some circumstances in which under North Carolina law that will be treated as separate offenses for the purposes of North Carolina's habitual felon statute. And the final point I would make on that is that, despite Ms. Ray's suggestion that this is the equivalent of multiple concurrent sentences, state law clearly distinguishes between consolidated sentences and concurrent sentences. And you see that in the State v. Lopez case that we cited in the briefs, as well as a number of other Supreme Court cases in North Carolina. If there are no more questions, I thank the Court for this time. Thank you very much. We appreciate your arguments, and we'll go down and greet the lawyers and go to the next case.
judges: Diana Gribbon Motz, Roger L. Gregory, Ellen L. Hollander